UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHARON STUMP, ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 13-6739** |
| | * | |
| **SAMUEL CAMP, ET AL.** | * | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand, (Rec. Doc. 7). The Court has reviewed the briefs and applicable law and, after hearing oral argument on the motion, now issues this Order and Reasons. For the reasons set forth below, the Court finds that Plaintiffs' Motion to Remand should be granted.

### I.    BACKGROUND

Plaintiffs are all present or former employees of Pamlab, L.L.C. Plaintiffs brought the present lawsuit in the Twenty-Second Judicial District Court for the Parish of St. Tammany against Defendants Samuel M. Camp, Judith M. Camp, Camline LLC f/k/a Pamlab, LLC (collectively "Defendants"). According to Plaintiffs, while they were employed at Pamlab over the past twenty years, they earned "points" in an "Incentive Points Employee Compensation Plan." (Rec. Doc. 1-1 at 6). Plaintiffs characterize these points as being similar to stock, as they represented an interest in the company. (Rec. Doc. 1-1 at 6). Plaintiffs claim that they were told that if a "conversion event" took place, i.e. if the company was sold, workers still employed at Pamlab could liquidate their points into cash. (Rec. Doc. 7-1 at 1). According to Plaintiffs, the purpose of this plan was to encourage employees to stay with the company and make it successful. (Rec. Doc. 1-1 at 6).

1

Plaintiffs allege that on January 9, 2012, they received a letter from the company's Senior Vice President of Human Resources, Jim Hendry. (Rec. Doc. 1-1 at 7). The letter informed them that the points system had been terminated and that the point holders essentially no longer held points. (Rec. Doc. 1-1 at 7, 22). The letter stated that Plaintiffs could either elect to receive a cash payment based on how many points they formerly held or Plaintiffs could receive the same number of points in a newly-adopted 2012 Incentive Point Employee Compensation Plan. (Rec. Doc. 1-1 at 23). According to Plaintiffs, the terms of the newly adopted plan provided that the new plan would terminate in July 2017 and that the company reserved the right to terminate the plan for any reason at any time. (Rec. Doc. 7-1 at 2). Plaintiffs claim that they selected the cash buyout option because of the unfavorable terms of the new point plan. (Rec. Doc. 7-1 at 2).

Plaintiffs allege that one year later, in March 2013, Pamlab was sold to Nestle Health Science ("Nestle") for $500 million dollars. (Rec. Doc. 7-1 at 2). Plaintiffs claim that the few employees who were "in the know" and elected to receive points in the newly adopted plan received "a net return over 1,000 percent greater than those employees who had previously been 'bought out.'" (Rec. Doc. 7-1 at 2). Plaintiffs claim that the Defendants were already in negotiations with Nestle when they sent the 2012 letter to employees. (Rec. Doc. 7-1 at 2). Plaintiffs are suing the Defendants for bad faith breach of contract and misrepresentation. They are seeking recession of the Release Agreement that they signed when they elected the cash buyout option and they are asking to be paid for their points pursuant to the same formula that was used to pay employees who held points at the time of the sale to Nestle. (Rec. Doc. 1-1 at 14).

On November 15, 2013, Plaintiffs brought the present suit in state court and asked the court to allow them to proceed as a class action, pursuant to Louisiana Code of Civil Procedure, Article 591.  Plaintiffs defined their proposed class as:

> All individuals employed by Pamlab, LLC who held points in Pamlab, LLC Incentive Point Employee Compensation Plan as of January 9, 2012 and who elected to receive a cash payment for said points by signing the Release Agreement and Participation Election form required by Pamlab, LLC in January of 2012 and who remained employed at Pamlab until the company was sold to Nestle.

(Rec. Doc. 1-1 at 10).  Plaintiffs stated that there are "in excess of 100" individuals in the class and that they share common questions of law and fact.

On December 19, 2013, Defendants removed the case to this Court pursuant to 28 U.S.C. Section 1441(a) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.  Defendants claim that this Court has jurisdiction under CAFA because 1) minimal diversity of citizenship exists between Plaintiffs and Defendants, 2) there are at least 100 class members, and 3) the aggregate amount in controversy among all class Plaintiffs exceeds $5,000,000.  In support of the second requirement, Defendants point out that Plaintiffs state in their complaint that there are in excess of 100 class members.  Defendants, however, admit that according to company records, there were 87 employees who qualify as class members.  (Rec. Doc. 1 at 6) ("The records of Pamlab, L.L.C. reveal that there were eighty-seven (87) Pamlab, L.L.C. employees who were participants in the Fourth Amended and Restated Incentive Point Employee Compensation Plan who elected to receive cash payments and signed Release Agreements...").  Defendants, however, argue that Plaintiffs failed to join indispensable parties pursuant to Federal Rule of Civil Procedure 19, namely, the spouses of employees who live in community property states.  According to Defendants, once you add those spouses, the number

3

of class members and indispensable parties becomes 129. Therefore, this Court has jurisdiction pursuant to CAFA.

## II.     PRESENT MOTIONS

On January 8, 2014, Plaintiffs filed the present motion to remand. (Rec. Doc. 7). The parties agree that there is minimal diversity and that the aggregate amount in controversy exceeds $5,000,000. The question before the Court is whether there are more than 100 "members of all proposed plaintiff classes in the aggregate" as required by CAFA. 28 U.S.C. § 1332(d)(5)(b).

In the motion to remand, Plaintiffs argue that this Court does not have jurisdiction under CAFA because there are not more than 100 class members. Plaintiffs point out that in Defendants' notice of removal Defendants admit that there are only 87 Pamlab employees who constitute members of the putative class action. Plaintiffs argue that spouses, no matter what marital regime exists in the state, are not parties to this lawsuit and have no cause of action against Defendants. Plaintiffs emphasize that this is a breach of contract lawsuit and that there was no privity of contract between employees' spouses and the Defendants. Plaintiffs claim that "the community" is not a juridical entity that can sue or be sued. Plaintiffs argue that Defendants' theory regarding joinder of spouses is legally wrong and would result in a regime in which spouses in community property states are required parties in every lawsuit. Plaintiffs claim that this case has nothing to do with retirement benefits or retirement funds. Lastly, Plaintiffs claim that their statement in the complaint was merely an "educated guess" of how many class members were involved. Plaintiffs argue that this statement is not binding and that they should be given leave to amend their original complaint if this Court finds that estimate to be determinative.

In opposition to the motion to remand, (Rec. Doc. 12), Defendants reiterate that Plaintiffs alleged in their complaint that there were over 100 potential class members. Defendants argue that jurisdictional facts are evaluated based on the pleadings at the time of removal. Therefore, Defendants claim that removal under CAFA should be based on Plaintiffs' allegations regarding numerosity. In the alternative, Defendants argue that Plaintiffs have failed to join indispensable parties, who, when joined, will satisfy the numerosity requirement. Defendants claim that Federal Rule of Civil Procedure 19 requires spouses in community property states to be joined because they have "interests related to the subject matter of the action." Further, Defendants explain that these spouses have an interest and claim to a limited fund and are, therefore, considered indispensable parties.

### III. LAW & ANALYSIS

#### A. The Face of Plaintiffs' Complaint

As an initial matter, this Court is not bound by the statements made in Plaintiffs' complaint. 28 U.S.C. § 1453 addresses the removal of class actions and provides that "Section 1447 shall apply to any removal of a case under this section…." 28 U.S.C. § 1447 states that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In *Frazier v. Pioneer Americas LLC*, the Fifth Circuit explained that whether CAFA requirements have been satisfied is a jurisdictional question. Even if the parties do not raise these issues, the courts are obligated to raise them on their own in order to be satisfied that jurisdiction exists. 455 F.3d 542, 545 (5th Cir. 2006).

In *Hollinger v. Home State Mutual Insurance Company*, the Fifth Circuit stated that "Jurisdictional determinations 'should be made largely on the basis of readily available information.' 'The court has wide, but not unfettered, discretion to determine what evidence to

use in making its determination of jurisdiction.'" 654 F.3d 564, 570-571 (5th Cir. 2011) (citations omitted). In that case the court analyzed whether an exception to CAFA existed. Similarly, in *Coury v. Prot*, the Fifth Circuit stated that "[i]n making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." 85 F.3d 244, 249 (5th Cir. 1996) (citing *Jones v. Landry*, 387 F.2d 102 (5th Cir. 1967); 1 J. Moore, *Moore's Federal Practice* §0.74[1] (1996)). While the court in *Coury* dealt with a challenge to simple diversity jurisdiction, the same principles apply to a determination of jurisdiction under CAFA. *See Hollinger*, 654 F.3d at 570.

In light of the fact that the court is obligated to inquire into the existence of jurisdiction under CAFA and the court is not limited to information in the pleadings, there is no reason for this Court to refuse to look past Plaintiffs' statement in their complaint. While Plaintiffs did estimate that over 100 class members were involved, the Court now knows otherwise. In Defendants' notice of removal, they state that company records show 87 employees who qualify as class members. The accurate number, 87, is the correct number for this Court to consider. *See also, Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3rd Cir. 2009) ("In removal cases, we begin evaluating jurisdiction by reviewing the allegations in the complaint and in the notice of removal.").

### B. The Class Action Fairness Act of 2005

Congress enacted the Class Action Fairness Act of 2005 in order to address abuses in the class action system that were taking place in state courts. *See* William B. Rubenstein, *Newberg on Class Actions* §6:13 (5th ed. 2012). "CAFA *expands* jurisdiction for diversity class actions by creating subject matter jurisdiction in the federal courts if *all* of the following three conditions

6

are met: 1. a class with 100 or more class members, 2. at least one class member is diverse from at least one defendant, AND 3. there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Id.* at §6:14.  Accordingly, if those three requirements are met, the defendant can remove the class action from state court to federal court.

The numerosity requirement is included in 28 U.S.C. § 1332(d)(5)(B) which states that a class action cannot be removed if "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  The act defines "class action" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute…." 28 U.S.C. § 1332(d)(1)(B).  The act defines "class members" to mean "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D); s*ee also Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S.Ct. 736, 742 (2014) ("CAFA provides that in order for a class action to be removable, 'the number of members of all proposed plaintiff classes' must be 100 or greater, § 1332(d)(5)(B), and it defines 'class members' to mean 'the persons (named or unnamed) who fall within the definition of the proposed or certified class,' § 1332(d)(1)(D)").

Based solely on the statutory text, Defendants' argument fails.  As the Supreme Court has explained, "when 'the statute's language is plain, 'the sole function of the courts''—at least where disposition required by the text is not absurd—'''is to enforce it according to its terms.'''" *Hartford Underwriters Ins. Co v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917))).  "The preeminent canon of statutory interpretation requires [the court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) (citing *Connecticut*

*Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992)). CAFA states that there must be 100 or more "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action" in order for a federal court to have jurisdiction over the class action. 28 U.S.C. §§ 1332(d)(1)(D), 1332(d)(5)(B). Plaintiffs' definition of the proposed class in this case was very specific—"all individuals employed by Pamlab, LLC who held points…and who elected to receive a cash payment for said points by signing a Release Agreement…and who remained employed at Pamlab until the company was sold…." (Rec. Doc. 1-1 at 10). Based on the Plaintiffs' definition, spouses of employees who live in community property states are not members of the proposed class. Accordingly, the Court is not to consider those spouses when assessing whether the jurisdictional requirements provided in CAFA have been met.

This interpretation of the statutory language does not result in absurd consequences. Instead, it comports with the "well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court and with the equally well-established presumption against federal removal jurisdiction." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007)) (interpreting the statutory text of CAFA and finding that CAFA's mass action provision does not permit a defendant to remove separate state court actions, each involving fewer than 100 plaintiffs, to state court).

Last month, the Supreme Court issued an opinion in which it interpreted the meaning of CAFA's mass action provision. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S.Ct. 736 (2014). While the Court was interpreting a different provision of the statute, its statutory interpretation is still instructive. In *Hood*, the Supreme Court rejected the theory that CAFA's definition of a mass action, which requires "claims of 100 or more persons," includes unnamed

persons who are real parties in interest. *Id.* at 742. The Court reasoned that "the statute says '100 or more persons,' not '100 or more named or unnamed real parties in interest.' Had Congress intended the later, it easily could have drafted language to that effect." *Id.* The Court went on to point out that the class action provision, the provision at issue in this case, does include "named or unnamed" persons. *Id.* However, the Court's analysis in *Hood* is equally applicable here. If Congress wanted to include all named or unnamed interested or required parties, it could have included that language. Instead, Congress chose to require 100 or more named or unnamed persons who fall within the definition of the proposed class. 28 U.S.C. § 1332(d)(1)(D). There is nothing to indicate that the reference to the "definition of the proposed or certified class" was unintentional.[1]

### C. Louisiana Statute

The Defendants argue that the spouses should be included in assessing CAFA's numerosity requirement. Defendants claim that the spouses are indispensable parties under Federal Rule of Civil Procedure 19. However, jurisdiction is determined by looking at the claims at the time of removal. *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). At the time of removal, this case was not yet subject to the Federal Rules of Civil Procedure. For this reason, the Court must look to Louisiana law on the topic. Under Louisiana law, the employees' spouses do not need to be parties in this lawsuit.

*1. Louisiana's community property regime*

---

[1] It should be noted that the Supreme Court characterizes the class action provision as "counting unnamed parties in interest." *Hood*, 132 S.Ct. at 742. However, this characterization is merely dicta and was meant to emphasize the inclusion of the word "unnamed." The Court does not focus on the second part of the provision, which mentions the definition of the proposed class.

Louisiana is a community property jurisdiction and has been since colonial days. *See* 16 Andrea Carroll and Richard D. Moreno, *Louisiana Civil Law Treaties: Matrimonial Regimes* § 1:1 (3d ed. 2013). "The basic policy by which spouses share equally the acquets and gains of either spouse during marriage has been provided for in the state's legislature since statehood…." *Id.* Louisiana Civil Code Article 2336 provides that "[e]ach spouse owns a present undivided one-half interest in the community property." "The community of acquets and gains is not a legal entity but a patrimonial mass, that is, a universality of assets and liabilities. An undivided one-half of the mass forms a part of the patrimony of each spouse during the existence of a community property regime…." LA. CIV. CODE ANN. art. 2336 cmt. (c).

Prior to 1979, the husband was considered the sole manager of the community and Article 686 provided that the husband was the proper plaintiff to sue on behalf of the community. *See* Carroll & Moreno, *supra*, § 5:20. In 1979, when the state implemented equal management, this was changed to provide that "either spouse is the proper plaintiff." *Id.* Article 686 of the Louisiana Code of Civil Procedure, titled "Marital community," now provides:

> Either spouse is the proper plaintiff, during the existence of the marital community, to sue to enforce a community right; however, if one spouse is the managing spouse with respect to the community right sought to be enforced, then that spouse is the proper plaintiff to bring an action to enforce the right.

LA. CODE CIV. PROC. ANN. art. 686.

As Article 686 makes clear, both spouses do not need to jointly bring a lawsuit to enforce a community right. This makes sense in a lawsuit, like this one, for breach of contract because "[t]hird persons…do not contract with a 'community'…. Third persons contract with individuals, a husband, a wife or both." Carroll & Moreno, *supra*, § 5:20. Louisiana Civil Code Article 2346 provides that a spouse who is not party to a contract "may not affect the legal relations and

responsibilities of the spouse who incurred the obligation and the other party or parties to that contract, because, in principle, contracts produce effects as between the parties only." As explained in the Louisiana Civil Law Treatise, "if one spouse contracts with a third person, the other spouse cannot 'cancel the contract, extend the time for performance, enforce the contract, or recover damages for its breach.'" Carroll & Moreno, *supra*, § 5:4. When a lawsuit arises out of a contract, the privity principle applies. The real party in interest is the contracting party or parties. "The other spouse may be affected financially by any judgment, and, thus, may have an interest in the litigation, but the third person is entitled to be sued by and to litigate with the person with whom he contracted." *Id.* If a defendant is sued by the other spouse, who the defendant had no contact with, the defendant should be able to succeed with a "no right of action" claim. *Id*.

A third paragraph was added to Article 686 in 1979. It provides that "[w]hen only one spouse sues to enforce a community right, the other spouse is a necessary party. Where the failure to join the other spouse may result in an injustice to that spouse, the trial court may order the joinder of that spouse on its own motion." LA. CODE CIV. PROC. ANN. art. 686. At the time that this paragraph was added, the Louisiana Civil Code made a distinction between indispensable and necessary parties. *See* Carroll & Moreno, *supra*, § 5:4. This paragraph was added in order "to make it clear that the non-suing spouse would never be an indispensable party." *Id.* Instead, judicial discretion governs whether the litigation can proceed without both spouses.[2] *Id*. The trial court can, on its own motion, join the second spouse if "failure to join the other spouse may result in an injustice to that spouse." LA. CODE CIV. PROC. ANN. art. 686.

---

[2] In 1995 Articles 641 and 642 of the Louisiana Code of Civil Procedure were amended to abolish the distinction between necessary and indispensable parties. Now a more flexible statement of considerations is provided to help guide judges in deciding whether the litigation can proceed without what was formerly called indispensable parties.

### *2. Employees' spouses are not proper plaintiffs in this case*

The present case involves a breach of contract claim made by current and former employees of the Defendants. In the complaint, Plaintiffs claim that Defendants breached their contract by terminating the Incentive Points Employee Compensation Plan. Further, Plaintiffs allege that the Release Agreement that they signed should be rescinded due to Defendants' fraud and misrepresentation. The employees who were parties to these employment-related contracts are the only parties who were in privity of contract with the Defendants. These employees are the "managing spouse[s]" with respect to the community's right to enforce that contract. Accordingly, the employees, and only the employees, are the proper plaintiffs in this lawsuit.[3]

The Court finds no reason to alter this understanding based on the contents of the contracts. While Defendants claim that this case involves "a limited fund, such as a retirement fund," the Incentive Points Employee Compensation Plan was not a retirement fund. In fact, the 2012 Plan states that if an employee retires "then such employee immediately shall cease to be a Participating Employee and all Incentive Points allocated to that employee shall be immediately and unconditionally forfeited back to Pamlab LLC." (Rec. Doc. 1-1 at 29). The points system was similar to a system of stock options in the company and the Release Agreement was a contract. The Court does not have to determine whether a contract involving retirement funds deserve special joinder consideration under Louisiana law, because this is was not a retirement fund.

Defendants argue that failure to join the spouses will result in an injustice to the Defendants because they might be subject to multiple suits and inconsistent judgments.

---

This judicial discretion now applies to both indispensable and necessary parties. *See* 16 Andrea Carroll and Richard D. Moreno, *Louisiana Civil Law Treaties: Matrimonial Regimes* §5:20 (3d ed.).

[3] The one exception to this would be if the non-signatory spouse acted as agent for the other spouse and brought the lawsuit on the other spouse's behalf. *See* 16 Andrea Carroll and Richard D. Moreno, *Louisiana Civil Law Treaties: Matrimonial Regimes* §5:4 (3d ed.).

According to Article 686, this is not a justification for joining the second spouse. *See* LA. CODE CIV. PROC. ANN. art. 686. Article 686 only focuses on injustice to the spouse, not the defendant. Furthermore, as stated earlier, the spouses who are not parties to the contract will not have a cause of action for enforcement of that contract. *See* Carroll & Moreno, *supra*, § 5:4. Lastly, the adoption of strict res judicata in 1990 diminished any concern over the risk that a defendant will be subject to double recovery. *See id.* at § 5:19 (citing La. Rev. Stat. Ann. § 13:4231 ("If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.")).

According to Louisiana law, joinder of the spouses in the present case is not mandatory. Further, Defendants have not pointed to any reason why the failure to join the spouses would result in an injustice to those spouses. Accordingly, under Louisiana law there are only 87 members of the proposed class.

### D. Federal Rule of Civil Procedure 19

Even looking at the Federal Rules of Civil Procedure, the Court is not persuaded that the spouses are required parties. Defendants point to Federal Rule of Civil Procedure 19(1)(B)(i) and 19(1)(B)(ii) which provide that a person must be joined as a party to a lawsuit if:

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Defendants claim that disposing of this action without the spouses will impair or impede the spouses' ability to protect their interest and will leave the Defendants subject to double or

13

inconsistent obligations.  Defendants cite no previous decision in which a court found that a spouse in a community property state is a required party under Federal Rule of Civil Procedure 19.  As a practical matter, such a decision would have significant ramifications.  Essentially, this Court would be holding that in any lawsuit involving a breach of contract (or, for that matter, any lawsuit involving possible monetary recovery to the plaintiff) the spouses of that plaintiff in community property states must be joined because of their shared interest in the community.  From a policy perspective, this would be unworkable.  Legally, this argument is similarly unpersuasive.

Rule 19(B) applies to a person who "claims an interest relating to the subject of the action…"  Fed. R. Civ. P. 19(B).  If spouses in community property states claim an interest relating to this case, it would necessarily be a state-created interest that arises from Louisiana's (or another community property state's) community property law.  Accordingly, it is still necessary to examine Louisiana law in order to fully understand the "interest" being claimed and whether that interest can be protected without the presence of both spouses.

As explained in the previous section, Louisiana law provides that "each spouse owns a present undivided one-half interest in the community property."  LA. CIV. CODE ANN. art. 2336.  The community is a "patrimonial mass" made up of "a universality of assets and liabilities."  LA. CIV. CODE ANN. art. 2336 cmt. (c).  Accordingly, the non-party spouse may have an interest in whatever judgment is obtained as a result of this lawsuit.  However, this interest will not be impaired or impeded if that spouse is not joined in the litigation.  The managing spouse, in this case the employee, can sue to enforce the community right.  *See* LA. CODE CIV. PROC. ANN. Art 686.  The non-party spouse's one-half interest in the assets of the community will be enforced

and protected by this lawsuit. Therefore, the spouse does not need to be joined under Rule 19(B)(i).

The Court is similarly unpersuaded that Rule 19(B)(ii) applies here. Louisiana Code of Civil Procedure article 681 states that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." Louisiana Civil Code article 2346 provides that a spouse who is not party to a contract "may not affect the legal relations and responsibilities of the spouse who incurred the obligation and the other party or parties to that contract, because, in principle, contracts produce effects as between the parties only." Consistent with this, Article 686 of the Louisiana Code of Civil Procedure provides that the "managing spouse with respect to the community right" is the proper plaintiff in an action to enforce that right. *See* LA. CODE CIV. PROC. ANN. art. 686. In this case, the employees who signed the contracts are the proper plaintiffs in an action to enforce or rescind those contracts. Under Louisiana law, the non-party spouses have no cause of action against the Defendants. Therefore, Defendants do not face a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* Fed. R. Civ. P. 19(1)(B)(ii).

## IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion to Remand (Rec. Doc. 7) is **GRANTED**.

New Orleans, Louisiana, this 13th day of February, 2014.

_____
UNITED STATES DISTRICT COURT JUDGE